**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MARLEN JAMILETH ORTIZ SOTO,   :

    *Petitioner*,              :  Case No. 1:25-cv-768

                    :

v.                       :  Judge Jeffery P. Hopkins

                    :

SAM SAXON, *et al.*,        :

                    :

    *Respondents*.         :

---

## OPINION AND ORDER

---

Petitioner Marlen Jamileth Ortiz Soto ("Ortiz Soto"), a citizen and native of Honduras, was a passenger in the car of her now husband—a United States citizen—on August 17, 2025, when police detained them for a traffic violation, forcibly removed her from the car, and then ultimately transported her to the ICE detention facility at the Butler County Jail. Ortiz Soto, through her attorneys, is in the throes of challenging her detention and removal in proceedings in the Cleveland Immigration Court which is being opposed by Respondent Department of Homeland Security (DHS).[1] Since her arrest in August, DHS has continued to detain Ortiz Soto without bond after the Immigration Judge (IJ) declared that it did not have jurisdiction to hear bond cases of individuals who entered the United States at the southern border and had been released.

Before the Court is Ortiz Soto's Petition for a Writ of Habeas Corpus (Doc. 1), filed

---

[1] Respondents named by the Petitioner in this proceeding include Sam Saxson, Director of Cincinnati Field Office, U.S. Immigration and Customs Enforcement (ICE); Todd Lyons, Acting Director of U.S Immigration and Customs Enforcement; Kristi Noem, Secretary of the U.S. Department of Homeland Security; and Pam Bondi, Attorney General of the United States, in their official capacities. Respondents shall be referred to collectively as "DHS."

pursuant to 28 U.S.C. § 2241, which asks for her immediate release from detention and restoration of the conditions of supervision initially imposed by immigration authorities pending resolution of her removal proceeding. Respondent DHS has filed a Return of Writ (Doc. 11), to which Ortiz Soto has filed a Reply (Doc. 14).

Respondent Richard K. Jones, Sheriff of the Butler County Jail, filed a Motion to Dismiss (Doc. 7) him from the proceeding based on a failure to state a claim upon which relief can be granted citing, *Roman v. Ashcroft et al.*, 340 F.3d 314, 319–320 (6th Cir. 2003) (holding that "although the warden of each detention facility technically has day-to-day control over alien detainees, the INS District Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners."). Magistrate Judge Karen L. Litkovitz has issued a Report and Recommendation (Doc. 15) recommending that Respondent Jones' motion be granted and that he be dismissed as a Respondent. All of these matters are now ripe for determination.

For the reasons that follow, the Court **ADOPTS** the Report and Recommendation, **GRANTS** the Motion to Dismiss filed by Respondent Jones, and **ORDERS** the Writ of Habeas Corpus dismissed as to him. The Court also **GRANTS** the Writ of Habeas Corpus as to DHS and **ORDERS** the immediate release of Ortiz Soto under the conditions previously imposed, unless DHS provides Ortiz Soto with a due process-compliant individualized bond hearing within **7 days** of the date of this Order.

## I.      FACTUAL BACKGROUND

Ortiz Soto is a 24-year-old Honduran who has been residing in the United States since the age of 18. Pet., Doc. 1, ¶ 1. Ortiz Soto entered the United States without admission or inspection near Hidalgo, Texas, which is not an official Port of Entry ("POE"), on or about

January 21, 2019, with her mother and siblings. *Id.*; Whitman Decl., Doc. 11-1, ¶ 5. DHS contends that on January 22, 2019, it apprehended Ortiz Soto and commenced removal proceedings against her under 8 U.S.C. § 1229a of the Immigration and Nationality Act ("INA") by issuing a Notice to Appear. Whitman Decl., Doc. 11-1, ¶ 7; *id.* at Ex. A, Doc. 11-2, PageID 70–71. Thereafter, DHS issued Ortiz Soto an Order of Release on Recognizance, removing her from detention. *Id.* at Ex. B, Doc. 11-3, PageID 72–75. DHS characterizes Ortiz Soto as "an alien 'applicant for admission.'" Doc. 11, PageID 36. Ortiz Soto states that she is an applicant for asylum and is married to a United States citizen. Pet., Doc. 1, ¶¶ 1–2. She further states that, since being released by immigration authorities following her entry at the southern border, she has obtained work authorization and has satisfied all requirements imposed by immigration authorities. *See generally* Pet., Doc. 1; Doc. 14.

According to the Petition, "Ortiz Soto was a passenger in her now husband's car on August 17, 2025, when Fairfield police detained them for a traffic violation." Pet., Doc. 1, ¶ 2. Ortiz Soto states that federal agents removed her from the car, processed her at the Blue Ash Immigration and Customs Enforcement ("ICE") Field Office, and detained her at the ICE-contracted Butler County Jail. *Id.* On August 25, 2025, she filed a bond request with the Cleveland Immigration Court, which was denied.[2] Whitman Decl., Doc. 11-1, ¶ 8. The next day, on August 26, 2025, DHS filed a Form I-261 adding an additional charge of inadmissibility/deportability, charging that Ortiz Soto was not in possession of a valid unexpired visa, reentry permit, border crossing card, or other valid entry document. Doc. 11, PageID 36; Whitman Decl., Ex. D, Doc. 11-5, PageID 78–79. As noted, at Ortiz Soto's bond

---

[2] The declaration erroneously states that Ortiz Soto filed her bond request on April 25, 2025. Whitman Decl., Doc. 11-1, ¶ 8. Ortiz Soto was not detained until August 2025, so the Court will presume that Whitman intended to state that she sought bond on August 25, 2025.

3

hearing on September 4, 2025, the Immigration Judge ("IJ") denied bond based on lack of jurisdiction. Ortiz Soto did not appeal that decision to the Board of Immigration Appeals ("BIA"). Doc. 11, PageID 36.

Ortiz Soto had an individual merit hearing on December 2, 2025. Doc. 17. There, the IJ orally stated, among other things, that a removal order would issue and that Ortiz Soto would have 30 days to appeal that order. *Id.* at PageID 113. Ortiz Soto filed an appeal to the BIA on December 9, 2025, and that appeal was accepted on December 16, 2025. Doc. 18.

## II.     SUMMARY OF THE ARGUMENTS

### A.  Ortiz Soto

Ortiz Soto contends that a writ of habeas corpus for her immediate release is warranted because she was not afforded an individualized bond determination and she believes that she should be released from detention pending any final determination of whether she is to be removed. According to Ortiz Soto, DHS abruptly and without justification is seeking to implement an erasure of the once clear lines that existed between the detention statutes which apply to noncitizens unlawfully *residing* in the United States, *i.e.*, 8 U.S.C. § 1226, and those which apply to noncitizens *arriving* at the southern border of the United States and who are *seeking admission* into this country, *i.e.*, 8 U.S.C. § 1225(b). Ortiz Soto maintains that her detention is governed by the former, *i.e.*, 8 U.S.C. § 1226, which entitles her to a bond hearing. DHS, on the other hand, argues strenuously that the latter statute, 8 U.S.C. § 1225(b), applies and renders Ortiz Soto ineligible for bond.

### B.  DHS

DHS raises several arguments for why this Petition should be summarily dismissed. First, DHS contends that several provisions of the INA deprive this Court of subject matter

4

jurisdiction to review Ortiz Soto's claims. Doc. 11, PageID 37–42. Next, DHS argues that the Petition must be denied because Ortiz Soto failed to exhaust available administrative remedies. *Id*. at PageID 42–45. Finally, they argue that Ortiz Soto is lawfully detained under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible for release under 8 U.S.C. § 1226(a), which is the relief she seeks though the Petition for habeas corpus. *Id*. at PageID 45–65.

## III.   CONTROLLING LAW AND ANALYSIS

The Court will first address jurisdiction.

### A.  The Court has subject matter jurisdiction over the petition.

Under 28 U.S.C. § 2241, district courts have the authority to grant a writ of habeas corpus to any petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). DHS invokes several provisions set forth in 8 U.S.C. § 1252 of the INA, entitled "Judicial review of orders of removal," for the proposition that under certain circumstances, including those present here, a federal court's jurisdiction to review habeas corpus petitions has been circumscribed by Congress.

### 1.  Section 1252(e)(3)

First, DHS points to § 1252(e)(3). Section 1252(e)(3) channels judicial review of orders issued under § 1225(b) exclusively to the United States District Court for the District of Columbia. But as explained more fully below, the Court is not persuaded that Ortiz Soto's detention is governed by § 1225(b). That being so, the Court rejects the argument relied on by DHS that § 1252(e)(3) bars review of Ortiz Soto's claims. *See, e.g., Boffill v. Field Office Director*, No. 25-cv-25179, 2025 WL 3246868, at *2 (S.D. Fla. Nov. 20, 2025) ("[S]ection 1252(e)(3) is inapplicable as it is limited, by its express terms, to determinations under section 1225(b) and, as explained below, section 1225(b) does not apply here." (collecting cases)); *see also Orozco-*

*Martinez v. Lynch*, No. 25-cv-1353, 2025 WL 3223786, at *2 (W.D. Mich. Nov. 19, 2025).

### 2. Section 1252(g)

Next, in support of its argument that the Court lacks jurisdiction here, DHS cites § 1252(g). Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

DHS's reliance on § 1252(g) is misplaced. Here, the Petition Ortiz Soto filed *only* raises pre-removal, *detention-based claims*. The Petition expressly states that Ortiz Soto is not challenging any discretionary action to commence *removal proceedings*, only DHS's determination that she should be subject to mandatory detention during the pendency of those proceedings. Doc. 14, PageID 99. Most courts which have been faced with this question support Ortiz Soto's position. In those cases, the courts have held that a federal court retains jurisdiction under § 2241 to review habeas claims by noncitizen detainees either to challenge their detention as unconstitutional or to raise legal questions regarding the government's statutory authority to detain them. *See, e.g., Malam v. Adducci*, 452 F. Supp. 3d 643, 649 (E.D. Mich. 2020) (concluding that the district court had jurisdiction to review validity of pre-removal detention (citing *Jennings v. Rodriguez*, 538 U.S. 281 (2018)); *Lopez v. Barr*, 458 F. Supp. 3d 171, 175 (W.D.N.Y. 2020) ("District courts, however, can review claims by aliens challenging the constitutionality of their pre-removal detention." (citing *Denmore v. Kim*, 538 U.S. 510, 516–17 (2003)); *Salvador F.-G. v. Noem*, No. 25-cv-0243, 2025 WL 1669356, at *5

(N.D. Okla. June 12, 2025) (citations omitted); *J.C.G. v. Genalo*, No. 1:24-cv-08755, 2025 WL 88831, at *3 (S.D.N.Y. Jan. 14, 2025) ("The jurisdiction conferred on federal courts by Section 2241 includes the authority to review noncitizen's claims challenging the constitutionality of their detention during the pendency of removal proceedings." (citations omitted)).

It is no surprise that courts have taken this view when one considers that a plain reading of the jurisdiction-excluding language in § 1252(g) leads to the conclusion that it does *not* apply to decisions to detain a noncitizen while removal proceedings are pending. Upon close examination, Section 1252(g) expressly excludes from judicial review "the decision or action by the Attorney General to *commence proceedings, adjudicate cases, or execute removal orders* against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added). *See also Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (Section  1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"). However, as the Supreme Court in *Reno* observed, "[t]here are of course many other decisions or actions that may be part of the deportation process," including, but not limited to, the decisions to open an investigation and to surveil the suspected offender. *Reno*, 525 U.S. at 482. And as *Reno* went on to say, "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id*.

Countless district courts have been called upon to address this same jurisdictional argument in the context of the statutory question now before this Court. Unsurprisingly, most have rejected DHS's arguments and exercised jurisdiction. *See Hasan v. Crawford*, 800 F. Supp.

3d 641, 651 (E.D. Va. 2025) (challenges to detention and denial of bond are not challenges to the commencement, adjudication, or execution of removal orders covered by § 1252(g)); *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1144–45 (D. Minn. 2025) (challenges to pre-removal detention without bond are not challenges to the commencement, adjudication, or execution of removal orders); *Vasquez Perdomo v. Noem*, 790 F. Supp. 3d 850, 885 (C.D. Cal. 2025) ("Plaintiffs are not raising constitutional claims related to the Attorney General's decision or action to commence proceedings, adjudicate cases, or execute removal orders; rather, the claims here concern 'issues which ripened before removal proceedings began[.]'"); *see also Lopez Briseno v. Noem*, No. 25 C 12092, 2025 WL 3145985, at *1 (N.D. Ill. Nov. 11, 2025) ("A detainee's claims that challenge fundamental legal errors that may violate the detainee's due process rights do not challenge the decision 'to commence proceedings, adjudicate cases, or execute removal orders.'"); *E.V. v. Raycraft*, No. 4:25-cv-2069, 2025 WL 3122837, at *5 (N.D. Ohio Nov. 11, 2025); *Alejandro v. Olson*, No. 1:25-cv-02027, 2025 WL 2896348, at *3 (S.D. Ind. Oct. 11, 2025) (challenges to the *legality* of detention, rather than *decision* to detain falls outside of § 1252(g)).

The Court concludes that the decision to detain a noncitizen (not charged with a crime) pending the final determination of whether she is to be removed, falls well outside the ambit of § 1252(g)'s prohibition against district courts exercising jurisdiction over challenges to the commencement, adjudication, or execution of removal orders by the Attorney General against the noncitizen.

### 3.  Section 1252(b)(9)

Lastly, along this same line of arguments, DHS cites § 1252(b)(9), which channels judicial review of *final* removal orders exclusively to Courts of Appeals—in our case the Sixth

Circuit. Specifically, DHS relies upon § 1252(b)(9), which provides in relevant part:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9). And § 1252(a)(5), which in relevant portion, adds:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subjection (e).

8 U.S.C. § 1252(a)(5).

According to DHS, § 1252(a)(5) and § 1252(b)(9), when construed together, make *any* issue arising from *any* "removal-related" activity tantamount to a final removal order that can be reviewed only by the Sixth Circuit in accordance with § 1252(b)(9). Doc. 11, PageID 39–40 (citations omitted). The Court finds DHS's position lacks merit. That same argument has been tried and rejected by numerous courts in the same context as the question presented here. *See, e.g., Hasan*, 800 F. Supp. 3d at 650 ("Section 1252(b)(9) does not insulate detention orders from judicial review because they are 'separate and apart from' orders of removal." (citation omitted)); *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 968–69 (D. Minn. 2025) (holding that sections 1252(a)(5) and (b)(9) did not deprive court of jurisdiction where petition did not seek review of a removal order); *Maldonado*, 795 F. Supp. 3d at 1146 ("Given the constitutional challenge to Petitioner's detention, as opposed to a challenge to a removal, jurisdiction over her habeas petition is proper. It is undisputed that her claims do not challenge a removal order, and § 1252(b)(9) cannot insulate unconstitutional detention from judicial review." (discussing *Ozturk v. Hyde*, 136 F.4th 382, 400 (2d Cir. 2025) and *Jennings*, 583 U.S. at 294–

95); *Romero v. Hyde*, 795 F. Supp. 3d 271, 276–77 (D. Mass. Aug. 19, 2025) (holding that § 1252(a)(5) and § 1252(b)(9) construed together did not divest the district court of jurisdiction to determine what legal authority governed the petitioner's detention and whether, as a result, the petitioner was entitled to a bond hearing (collecting cases)); *see also Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *2 (N.D. Ill. Oct. 24, 2025) (because the petitioner was simply challenging the government's decision to deny him a bond hearing under Section 1225 while the question of whether he will be removed is resolved, the petitioner was not challenging anything relating to the process by which removability would be determined); *Rodriguez Vazquez v. Bostock (II)*, 802 F. Supp. 3d 1297, 1313–15 (W.D. Wash. 2025) (claims challenging pre-removal detention are "independent of or collateral to the removal process" and review is not barred by § 1252(b)(9) (discussing *Jennings*, 583 U.S. at 291–95)).

Given the weight of authority and this Court's own view of the language contained in § 1252(a)(5) and § 1252(b)(9), the Court concludes that it retains subject-matter jurisdiction to entertain the § 2241 Petition now before it.

### B. Exhaustion of administrative remedies is not required here.

DHS next argues that Ortiz Soto's Petition must be dismissed because she failed to exhaust all available administrative remedies. Doc. 11, PageID 42–45. Ortiz Soto counters by contending that exhaustion—*i.e.*, appealing the IJ's decision to the BIA to deny bond—would be futile and impose undue hardship on her. Doc. 14, PageID 99–102. The Court agrees.

Ordinarily, with few exceptions, a petitioner must exhaust administrative remedies before filing a habeas corpus petition pursuant to 28 U.S.C. § 2241. *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992), *superseded by statute as stated in Woodford v. Ngo*, 548 U.S. 81 (2006). *See also Salvador*, 2025 WL 1669356, at *6 ("The Court likewise has found no clear statement

10

from Congress that exhaustion is required before a noncitizen seeks habeas review to challenge pre-removal detention."); *J.C.G.*, 2025 WL 88831, at *4–6 (excusing exhaustion requirement as futile). Where, as here, exhaustion is not *statutorily* required, courts have examined whether exhaustion should nonetheless be required as a matter of prudence. *See, e.g., Salad v. Dep't of Corr.*, 769 F. Supp. 3d 913, 921 (D. Alaska 2025) ("Administrative exhaustion is prudential rather than a jurisdictional requirement for habeas review under § 2241." (citing *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004)).

Courts within the Sixth Circuit have applied the Ninth Circuit's test for when federal courts should require prudential exhaustion. *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (E.D. Mich. 2025); *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983). That test directs courts to consider whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.*

Here, these factors do not favor invoking prudential exhaustion. This case concerns issues squarely within the purview of federal courts: statutory interpretation and due process. *See, e.g., Velasco-Sanchez v. Raycraft*, No. 2:25-cv-13730, 2025 WL 3553672, at *5 (E.D. Mich. Dec. 11, 2025); *Mejia v. Noem*, No. 1:25-cv-1227, 2025 WL 3041827, at *2 (W.D. Mich. Oct. 31, 2025); *Pizzaro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025). Further, consistent with Sixth Circuit precedent, because the BIA cannot review constitutional challenges like the due process challenge raised by Ortiz Soto,

11

exhaustion is not generally required. *Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006).

Had we the need to find an alternate reason for excusing the exhaustion requirement, one can easily be discovered. In situations where a court might normally require prudential exhaustion, the court retains discretion to waive that requirement, such as when exhaustion would impose hardship. And, undoubtedly here, requiring exhaustion would impose hardship on Ortiz Soto. *Lopez-Campos*, 797 F. Supp. 3d at 778–79 (citing *Rodriguez Vazquez v. Bostock (I)*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025)). That Ortiz Soto has already had her final removal hearing is immaterial. Because no formal removal order has been fully resolved on appeal to the BIA, Ortiz Soto remains in pre-removal detention and thus eligible to request bond. *See, e.g., Velasco Lopez v. Decker*, 978 F.3d 842, 852 (2d Cir. 2020) (noting that pre-removal detention lasts through the initial removal determination proceedings and all inter-agency and federal court appeals).

Another important reason why waiver of prudential exhaustion is warranted relates to the fact that exhaustion plainly would be futile in light of the BIA's decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), a case where the BIA rejected the statutory argument presented in the instant Petition. Here, too, we do not write on a clean slate; other courts have held a similar view.[3] *See Velasco-Sanchez*, 2025 WL 3553672, at *5; *see also Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 505 (S.D.N.Y. 2025); *Molina Ochoa v. Noem*, No. 1:25-cv-00881, 2025 WL 3125846, at *10 (D. N.M. Nov. 7, 2025); *Alvarez Ortiz v. Freden*, 808 F. Supp. 3d

---

[3] The Undersigned is mindful that another Judge in this Court reached a different result on the issue of whether to require prudential exhaustion. *Bartolon v. Bondi*, 813 F. Supp. 3d 811 (S.D. Ohio 2025) (McFarland, J.); *Cortez v. Lynch, et al.*, No. 1:25-cv-822, 2026 WL 82039 (S.D. Ohio Jan. 12, 2026) (McFarland, J.). The Undersigned has reviewed *Bartolon* and *Cortez*, and respectfully disagrees. *See Urrutia-Diaz v. Ladwig*, No. 2:25-cv-03098, 2025 WL 3689158, at *4 n.5 (W.D. Tenn. Dec. 19, 2025) (finding unpersuasive line of cases out of the Northern District of Ohio requiring administrative exhaustion of bond determinations).

579, 590 (W.D.N.Y. 2025); *Mejia*, 2025 WL 3041827, at *2; *Mosqueda v. Noem*, No. 5:25-cv-02304, 2025 WL 2591530, at *7 (C.D. Cal. Sept. 8, 2025).

In short, the Court finds that Ortiz Soto should not be required to exhaust administrative remedies on the facts presented, given the rather obvious futility in pursuing such a course; the BIA will not, nor can it give serious consideration to the constitutional claim for relief sought—a province left exclusively to the courts. *See Smith v. United States Securities & Exchange Comm'n*, 171 F.4th 798, 810 (6th Cir. 2026) (as the Sixth Circuit has recently explained, in determining whether exhaustion would be futile, "the crucial inquiry [is] whether the agency can provide the relief requested if the argument succeeds, not whether it is likely to succeed"). As such, the Court **DENIES** Respondents' request to dismiss this Petition for failure to exhaust.

### C. Section 1226(a) governs Ortiz Soto's detention in this case.

That brings us to the merits of the dispute—the statutory arguments the parties raise concerning whether § 1226(a) or § 1225(b)(2)(A) controls. Ortiz Soto maintains that her detention is governed by § 1226(a), which she contends applies to noncitizens present in the United States without admission or parole. By contrast, DHS asserts that Ortiz Soto's detention is governed by § 1225(b)(2)(A), which applies to arriving applicants "seeking admission." Under § 1226(a), detention is discretionary and customarily a detainee may request a bond hearing to be released pending his or her final removal determination. Under § 1225(b)(2)(A), on the other hand, detention is mandatory and the only exception is parole "for urgent humanitarian reasons or significant public benefit" pursuant to 8 U.S.C. § 1182(d)(5)(A). According to Ortiz Soto, she is entitled under § 1226(a) to immediate release or an individualized bond determination in which an IJ will determine (from arguments and

evidence offered) whether she presents a threat to the community or flight risk, or otherwise does not qualify for a bond. DHS assiduously maintains that because Ortiz Soto is subject to mandatory detention under § 1225(b)(2)(A), the IJ correctly determined that the Immigration Court was without jurisdiction to consider her bond request. DHS's position is unpersuasive and has been consistently rejected by more than 300 federal courts as of this writing.

The tension between § 1225(b)(2) and § 1226(a) was created by an "Interim Guidance" policy announced by ICE on July 8, 2025, and formally adopted by the BIA in the *Matter of Yajure Hurtado* on September 5, 2025. As explained by a sister court in the Eastern Division of Michigan:

> On July 8, 2025, ICE, in coordination with DOJ, issued a new policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," requiring all noncitizens who entered the United States without inspection to be subject to mandatory detention without bond. The policy applies this detention framework to any noncitizen regardless of when or where they were apprehended.

*Lopez-Campos*, 797 F. Supp. 3d at 776. Two months after the July 8 "Interim Guidance" policy announcement, the BIA held in *Hurtado* that noncitizens who are present in the United States without admission and who are arrested on a warrant are subject to detention under § 1225(b)(2)(A).

Acting on this new policy, DHS has taken the unprecedented step of asserting that Ortiz Soto—and in fact *all* noncitizen-immigrants present in the United States without inspection or parole, no matter how long they have been in this country or how far removed they are from the southern border—are *arriving applicants seeking admission* in the United States. Doc. 11, PageID 45–46. Taken at their word, officials at DHS now claim that § 1225(a)(1) defines an "applicant for admission" as a noncitizen present in the United States who has not been admitted or who arrives in the United States irrespective of whether they

14

arrived at a designated POE. *Id.* at PageID 45. As DHS further proclaims, "by its very definition, the term 'applicant for admission' includes two categories of aliens: (1) arriving aliens, and (2) aliens present without admission." *Id.* (citations omitted). According to DHS, because Ortiz Soto did not present herself at a POE and instead entered illegally and without having been admitted after inspection by an immigration officer, she is an alien "present without admission" and consequently an "applicant for admission." *Id.* at PageID 46. In DHS's view, applicants for admission who, like Ortiz Soto, are undergoing 8 U.S.C. § 1229a removal proceedings are automatically subject to detention pursuant to § 1225(b)(2)(A), and are simultaneously ineligible for a bond hearing before an IJ. *Id.* at PageID 48.

DHS's position hinges on the premise that there is no distinction between "arriving aliens seeking admission" and "aliens who are present without being admitted or paroled." *Id.* at PageID 49–50. DHS further insists that the Supreme Court has equated "applicants for admission" with aliens "seeking admission." Doc. 11, PageID 54 (citing *Jennings*, 583 U.S. at 289). Thus, the parties' opposing positions present the Court with a question of statutory interpretation.

This question demands that the Court turn first to the statutory text, *In re Vill. Apothecary, Inc.*, 45 F. 4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)), and in doing so, the Court must read each word of the statute consistent with its "ordinary, contemporary, common meaning," *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (quoting *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997)). If the statutory text is unambiguous, there is no need to proceed further. *In re Vill. Apothecary, Inc.*, 45 F.4th at 947. But if ambiguity exists, the Court must invoke the "cardinal principle of statutory construction" that "a statute ought, upon the whole, [] be so construed that, if it can

15

be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

The Sixth Circuit has not, at least to date, decided this question of statutory interpretation.[4] But the Court hastens to note that numerous other courts have:

> By a recent count, the central issue in this case – the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed – has been challenged in at least 362 cases in federal district courts.

> The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States. Thus, the overwhelming, lopsided majority have held that the law still means what it always has meant.

*Barco Mercado*, 811 F. Supp. 3d at 494 (collecting cases); *see also Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (In the context of a preliminary injunction proceeding, the Seventh Circuit rejected an interpretation offered by DHS and ICE which argued that the terms "applicant for admission" and "seeking admission" in 1225(b)(2)(A) are equivalent on the basis that it would render the latter superfluous); *but see Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026) ("Because the text here is clear that an 'applicant for admission' is also an alien who is 'seeking admission'. . . we find that the district court erred in holding that the Government could not detain [the petitioner] without bond under § 1225(b)(2)(A) and in granting habeas relief on that basis."); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026) ("[A]n applicant for admission to the United States is 'seeking admission' to the same, regardless of whether the person actively engages in further

---

[4] The Sixth Circuit heard argument on March 18, 2026 in several consolidated cases wherein the federal government respondents appeal the district court's orders granting petitioners' requests for writs of habeas corpus under 28 U.S.C. § 2241 challenging their detention without bond. *See Juan Lopez-Campos v. Kevin Raycraft et al.*, No. 25-1965, *Juan Sanchez Alvarez v. Kristi Noem et al.*, No. 25-1969, *Jose Contreras-Cervantes v. Kevin Raycraft*, No. 25-cv-1978, and *Jesus Pizarro Reyes v. Kevin Raycraft*, No. 25-1982.

affirmative acts to gain admission.").

With that in mind, the Court turns first to the plain language of the statutes.

### 1. The plain language favors Ortiz Soto's interpretation.

Congress titled § 1225: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens, referral for hearing." 8 U.S.C. § 1225. Section 1225(b)(2)(A) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "[A]dmission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). A noncitizen detained under § 1225(b)(2) may only be released under a limited exception: "if [she] is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1111 (E.D. Cal. 2025) (quoting *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269 (D. Mass. 2025)). Otherwise, "detention under § 1225(b)(2) is considered mandatory." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025); *see also Lopez-Campos*, 797 F. Supp. 3d at 777.

Section 1226, however, permits discretionary detention. Consider the text of the statute:

> (a) Arrest, detention, and release

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision,

17

the Attorney General—

> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
>> (A) a bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . .

8 U.S.C. § 1226(a). Noncitizens arrested and detained under § 1226(a) "have a right to request a custody redetermination (i.e., bond hearing) before an Immigration Judge," at which time the IJ evaluates whether there is a risk of flight or danger to the community. *Lopez-Campos*, 797 F. Supp. 3d at 777 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)).

When considering the plain language of the statutory authority at issue, Ortiz Soto's detention falls squarely within the ambit of § 1226(a), not § 1225(b)(2)(A). *See, e.g., Lopez-Campos*, 797 F. Supp. 3d at 781; *Lopez Benitez*, 795 F. Supp. 3d at 488–89; *Urrutia-Diaz v. Ladwig*, No. 2:25-cv-03098, 2025 WL 3689158, at *6 (W.D. Tenn. Dec. 19, 2025); *Del Villar v. Noem*, No. 4:25-cv-00137, 2025 WL 3231630, at *4–5 (W.D. Ky. Nov. 19, 2025); *Rodriguez Vazquez (II)*, 802 F. Supp. 3d at 1329–31; *Lepe*, 801 F. Supp. 3d at 1112 (collecting cases). Like numerous other petitioners throughout this county, Ortiz Soto does not fall within the category of an individual actively *seeking* admission. Ortiz Soto is already residing in this country (and has been for a number of years), though she has not been subject to inspection or authorization by an immigration officer. The court in *Lopez Benitez* offered this analogy:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there.

*Lopez Benitez*, 795 F. Supp. 3d at 489.

When viewing the plain language, it is clear: "[F]or section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025). *See also Patel*, 2025 WL 2996787, at *7. As discussed more fully below, the immigration documents before this Court, including and especially the Notice to Appear that was issued when Ortiz Soto first encountered immigration officials immediately after crossing the border, contain *none* of these findings. Thus, when considering the plain, ordinary meaning of the text, the Court concludes that Ortiz Soto's detention is governed by § 1226(a), not § 1225(b)(2)(A).

### 2. Respondents' interpretation would render § 1226(c) superfluous.

Even if the plain language of the two statutes leaves some ambiguity, the guiding canons for resolving statutory ambiguities still favor Ortiz Soto. The Court begins with the canon requiring avoidance of superfluousness. First, "[a]s numerous courts have observed, if 'all applicant[s] for admission' also are 'seeking admission,' then the words 'seeking admission' would be surplusage."[5] *Alvarez Ortiz*, 808 F. Supp. 3d at 591 (collecting cases); *see also Rodriguez Vazquez (II)*, 802 F. Supp. 3d at 1328 ("This distinction reaffirms that Congress chose to use different phrases to delineate separate categories of noncitizens in section 1225." (citation omitted)); *see also Lopez Benitez*, 795 F. Supp. 3d at 487–88 (would render the phrase "seeking admission" surplusage (collecting cases)). Additionally, regulations promulgated immediately after the enactment of the current iteration of the INA (the IIRIRA of 1996) also

---

[5]   This parsing of the words "seeking admission" is distinct from examining its present-tense usage.

undercut Respondents' position vis-à-vis the term "seeking admission." *Lopez Benitez*, 795 F.

Supp. 3d at 489 ("The implementing regulations—which were 'promulgated mere months

after passage of the statute' and have remained consistent over time—further underscore the

active nature of the term 'seeking admission' in 1225(b)." (citations omitted)); *Alvarez Ortiz*,

808 F. Supp. 3d at 592–93 (discussing 8 CFR 235.1(f)(1)).

Similarly, if § 1225(b)(2)'s mandatory detention provision applied to *all* noncitizens

residing in the United States, then the mandatory detention provision set forth in § 1226(c),[6]

and as recently amended by the Laken Riley Act, would both be superfluous.

> To recap, Section 1226(a) allows for the release of foreign nationals on bond and with conditions pending a decision on whether they are to be removed from the United States. Section 1226(c), however, requires the Attorney General to take into custody certain categories of foreign nationals [those accused or convicted of committing certain crimes] pending a decision on their removal. Moreover, in January 2025, Congress amended Section 1226(c) with the Laken Riley Act to add an additional category of foreign nationals who are subject to mandatory detention. *See* 8 U.S.C. § 1226(c)(1)(E); *Ortiz Donis, v. Chestnut*, No. 1:25-cv-01228, 2025 WL 2879514, at *9 (E.D. Cal. Oct. 9, 2025). If, as Respondent asserts, Section 1225(b)(2)(A) requires the mandatory detention of *all* foreign nationals in the United States, Section 1226(c) and its recent amendment pursuant to the Laken Riley Act would be superfluous and of no effect, because the subset of foreign nationals subject to mandatory detention under Section 1226(c) would already be included within Respondent's expansive reading of Section 1225(b)(2)(A). *Martinez*, 792 F. Supp. 3d at 220–21; *Ortiz Donis*, 2025 WL 2879514, at *9–10. Furthermore, Respondent's interpretation of Section 1225(b)(2)(A) would largely nullify Section 1226(a) because "it is not clear under what circumstances § 1226(a)'s authorization of detention on a discretionary basis would ever apply." *Lopez Benitez*, 795 F. Supp. 3d at 490.

*Patel*, 2025 WL 2996787, at *8. *See also Sampiao v. Hyde*, 799 F. Supp. 3d 14, 28 (D. Mass.

---

[6] A recent amendment to Subsection (c) renders detention mandatory for aliens found inadmissible or deportable under certain provisions. For example, under § 1226(c)(1)(E), detention is mandatory for aliens found inadmissible under certain provisions of 8 U.S.C. § 1182(a) and who have been charged with, arrested for, convicted of, or admitted to committing acts constituting "the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E).

2025) ("The government's interpretation of Section 1225(b)(2) would also render a provision of Section 1226(c)(1)(E)—which was added to Section 1226 in 2025 by the Laken Riley Act—superfluous."); *Lopez-Campos*, 797 F. Supp. 3d at 783 ("If Congress had intended for Section 1225 to govern all noncitizens present in the country, who had not been admitted, then it would not have recently adopted an amendment to Section 1226 that prescribes a subset of noncitizens be exempt from the discretionary bond framework."); *Urrutia-Diaz*, 2025 WL 3689158, at *7 ("Respondent's interpretation of § 1225(b) makes § 1226(c)'s mandatory detention provision superfluous. To be sure, subsections 1226(c)(1)(E)(i)-(ii) provide for mandatory detention of certain aliens. But it applies only to those aliens who both entered the country without inspection under 8 U.S.C. § 1182(a)(6)(A), (C), and (7) who are also 'charged with, . . . arrested for, . . . convicted of . . . ' certain crimes."); *Velasco-Sanchez*, 2025 WL 3553672, at *9 ("Further, if Congress had intended for Section 1225 to govern all noncitizens present in the country, who had not been admitted, then it would not have recently adopted [the Laken Riley Act] amendment to Section 1226 that prescribes a subset of noncitizens be exempt from the discretionary bond framework."); *Del Villar*, 2025 WL 3231630, at *5–6; *Chavez v. Director of Detroit Field Off.*, No. 4:25-cv-2061, 2025 WL 3187080, at *7 (N.D. Ohio Nov. 14, 2025) ("If, as the government argues, § 1226(a) only applied to admitted immigrants, Congress would not have had to carve out certain unadmitted immigrants using the Laken Riley Act."); *Godinez-Lopez v. Ladwig*, No. 2:25-cv-02962, 2025 WL 3047889, at *5 (W.D. Tenn. Oct. 31, 2025) ("Also, ICE's interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous."); *Rodriguez v. Noem*, 812 F. Supp. 3d 751, 759–61 (W.D. Mich. 2025); *Sanchez Alvarez v. Noem, et al.*, 807 F. Supp. 3d 777, 787 (W.D. Mich. 2025) ("If the Court accepted Respondents' interpretation of §§ 1225 and 1226, § 1226(c)(1)(E) would be rendered entirely

21

superfluous." (citation omitted)); *Rodriguez Vazquez (II)*, 802 F. Supp. 3d at 1324–25.

In short, the canons requiring a construction that avoid superfluousness, in this Court's view, severely undercut Respondents' position.

### 3. The statutory titles used by Congress differentiate § 1225(b)(2) and § 1226(a).

The titles of the two statutes are also telling. As the Supreme Court explains "the title of a statute in the heading of a section are tools available for the resolution of a doubt" about a statute's meaning. *Dublin v. United States*, 599 U.S. 110, 120–21 (2023) (citation omitted). Section 1225's title is "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." 8 U.S.C. § 1225 (emphasis added). As a sister court recently concluded, "Section 1225's title then envisions *arriving* aliens placed in *expedited* removal. But again, Petitioner was detained over 1,000 miles from the border years after he had crossed it." *Urrutia-Diaz*, 2025 WL 3689158, at *6. By contrast, Section 1226 is entitled "Apprehension and detention of aliens." 8 U.S.C. § 1226. Here, Ortiz Soto was *apprehended*, not while arriving in the United States, but more than four years later and hundreds of miles north of the border. And now she is *detained*. *See also Velasco-Sanchez*, 2025 WL 3553672, at *7 (finding that "statutory headings/titles are instructive" and that "[h]ere, it is as simple as looking to which statute makes the most sense – was Velasco-Sanchez arriving and being inspected, or was he apprehended and detained. The facts could not be clearer that it was the latter."); *Del Villar v. Noem*, 2025 WL 3231630, at *4 (quoting *Pizarro Reyes*, 2025 WL 2609425, at *5); *Rodriguez*, 812 F. Supp. 3d at 760 ("Congress' decision to include the word 'arriving,' as well as the decision to include references to methods of physical arrival, such as 'stowaways' and as 'crewmen' evidences an intent to address noncitizens coming the United States—whether on one side of the border or the other—and who are presently 'seeking

22

admission' into the United States." (citations omitted)).

### 4. The legislative history of § 1225(b)(2) and § 1226(a) connotes statutory meaning.

The legislative history of the current INA further undermines DHS's argument. *Rodriguez Vazquez (II)*, 802 F. Supp. 3d at 1331–33. Several district courts within the Sixth Circuit have found persuasive the summary of the legislative history of § 1226(a) set forth in *Rodriguez Vazquez (I)*, 779 F. Supp. 3d at 1260. *See, e.g., Chavez.*, 2025 WL 3187080, at *6 (collecting cases). According to *Rodriguez Vazquez (I)*:

> Before [the Illegal Reform and Immigration Responsibility Act of 1994 ("IIRIRA")] passed, the predecessor statute to Section 1226(a) governed deportation proceedings for all noncitizens arrested within the United States. [ ] This predecessor statute, like Section 1226(a), included discretionary release on bond. [ ] Upon passing IIRIRA, Congress declared that the new Section 1226(a) "restates the current provisions in [the predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond a [ ] [noncitizen] who is not lawfully in the United States." [ ]

*Rodriguez Vazquez (I)*, 779 F. Supp. 3d at 1260 (cleaned up). In other words, Congress declared the new iteration of § 1226(a) to have the same scope as its predecessor. And its predecessor applied to immigrants unlawfully in the United States, subjecting them to discretionary detention. *See also Maldonado*, 795 F. Supp. 3d at 1150 ("The legislative history of the IIRIRA also reflects this historical treatment of noncitizens residing in the United States, who had previously entered without inspection. They were generally subject to deportation hearings and discretionary release on bond." (citations omitted)); *Contreras-Lomeli v. Raycraft*, No. 2:25-cv-12826, 2025 WL 2976739, at *7–8 (E.D. Mich. Oct. 21, 2025); *Barrera v. Tindall*, No. 3:25-cv-541, 2025 WL 2690565, at *5 (W.D. Ky. Sept. 19, 2025); *Pizzaro Reyes*, 2025 WL 2609425, at *7.

DHS's interpretation of the scope of § 1225(b)(2) would all but render § 1226(a) null.

23

That is inconsistent with a legislative history that evidenced an intent for § 1226(a) to continue in the same capacity as its predecessor. *See, e.g., Lopez Benitez*, 795 F. Supp. 3d at 490 ("[R]espondents' novel position would expand § 1225(b) far beyond how it has been enforced historically, potentially subjecting millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have extremely limited (if any) application.").

**5. Respondents cannot prevail under *Jennings v. Rodriguez*.**

Additionally, the Court finds that DHS's reliance on *Jennings v. Rodriguez* is misplaced at best and disingenuous at worst. According to DHS, *Jennings* holds that § 1225(b)(2) is the applicable detention provision for *all* "applicants for admission—both arriving aliens and aliens present without admission alike…." Doc. 11, PageID 52 (citing *Jennings*, 583 U.S. at 301–03). But that is just not true.

In *Jennings*, the Court was "asked to interpret three provisions of U.S. Immigration law that authorize the Government to detain aliens in the course of immigration proceedings." *Jennings*, 583 U.S. at 286. Initially, the Court *appeared* to lump all noncitizens into a single category of "applicants for admission" with this statement: "Under § 302, 110 Stat. 3009-579, 8 U.S.C. § 1225, an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" *Id.* at 287. But throughout the decision, the Supreme Court clearly distinguished between noncitizens seeking admission at or near the border, detention of whom is governed by § 1225(b), and noncitizens already present in the country, whose detention is governed by § 1226. For example, in framing the question of how immigration officials determine whether to admit or remove noncitizens, the Supreme Court distinguished between when that determination is

24

made as to those "who have arrived at an official 'port of entry' … or who have been apprehended trying to enter the country at an unauthorized location,[]" *and* when that determination is made as to noncitizens "who are already present inside the country." *Id*. at 285. The Court proceeded to label those noncitizens whose detention is covered by § 1225 as "applicants for admission," and those noncitizens whose detention is covered by § 1226 as those "inside the United States." *Id*. at 288. "In sum," the Supreme Court noted, "U.S. Immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id*. at 289.

Because *Jennings* made clear that sections 1225 and 1226 apply in different circumstances to different categories of noncitizens in the country unlawfully, courts have overwhelmingly rejected the position advanced by DHS. *See Lopez-Campos*, 797 F. Supp. 3d at 782 ("Put simply, Section 1225 applies to noncitizens 'arriving to the country' and Section 1226 governs detention of noncitizens 'already in the country.'" (quoting *Jennings*, 583 U.S. at 288)); *Sanchez Alvarez*, 2025 WL 2942648, at *6 ("*Jennings* noted that § 1225 is part of the 'process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible.' Section 1226, however, applies to the process of 'arresting and detaining' aliens who are already living within the United States but are still subject to removal." (quoting *Jennings*, 583 U.S. at 287)); *Patel*, 2025 WL 2996787, at *6 ("In particular, the Court held that Section 1225(b) 'applies primarily to [foreign nationals] seeking entry into the United States,' whereas Section 1226 'applies to [foreign nationals] already present in the United States[.]'" (quoting

*Jennings*, 583 U.S. at 297, 303)); *Rodriguez Vazquez (II)*, 802 F. Supp. 3d at 1330–31; *Pizzaro Reyes*, 2025 WL 2609425, at *5 ("Whereas § 1225 governs removal proceedings for 'arriving aliens,' § 1226(a) serves as a catchall.… § 1226(a) is the 'default rule' and 'applies to aliens already present in the United States.'" (quoting *Jennings*, 583 U.S. at 288, 301)).

In sum, DHS cannot rely on *Jennings* to successfully assert that § 1225 applies to all noncitizens unlawfully in the United States.

### 6. Inconsistencies in the positions taken by DHS and ICE undermine the fair administration of the law.

Finally, DHS's position on the applicability of § 1225(b)(2)(A) is also inconsistent with positions previously taken by DHS and ICE—not only over the past three decades, but in this very case. *See, e.g., Lopez Benitez*, 795 F. Supp. 3d at 490–91 (decades of practice reflect "DHS's longstanding interpretation" of 1226(a) applying to those already in the country and 1225(b)(2) applying to those seeking admission into the country (collecting cases)); *Alvarez Ortiz*, 808 F. Supp. 3d at 595 ("Finally, if all that were not enough, the Court's reading of the statutes has been DHS's and ICE's reading for many years."); *Rodriguez Vazquez (II)*, 802 F. Supp. 3d at 1333–34. As the court in *Alvarez Ortiz* explained:

> "Congress enacted the current statutory scheme in the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in 1996." *Guerrero Orellana*, 802 F. Supp. 3d 297, 311 (D. Mass. 2025) (citing Pub. L. No. 104-208, §§ 302-03, 110 Stat. 3009, 3009-579 to -587 (1996)). And "[w]hen the Department of Justice issued implementing regulations months after passage of IIRIRA, the agency explained that '[d]espite being applicants for admission, aliens who are present without having been admitted or paroled … will be eligible for bond and bond redetermination.'" *Id*. (quoting Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997)). Under the administrations of five presidents—including this one in 2016-2020—section 1225 applied to noncitizens at or near the border or those who were still seeking admission under the legal fiction of parole; section 1226, on the other hand, applied to those noncitizens found in the United States without legal status and therefore subject to removal. *See id*. ("Until changing their positions this year, the relevant agencies consistently applied [section] 1226,

26

> not [section] 1225(b)(2)(A), to noncitizens who entered without inspection and were later apprehended within the country."). And nothing has changed—factually or legally—to warrant that ipse dixit change interpretation, which "would require the detention of millions of immigrants currently residing in the United States." *See Martinez*, 792 F. Supp. 3d at 218.

*Alvarez Ortiz*, 808 F. Supp. 3d at 595. *See also Lopez-Campos*, 797 F. Supp. 3d at 782 ("Notably, on his Notice to Appear, Respondents checked the box labeled 'You are an alien *present* in the United States who has not been admitted or paroled' rather than checking the box labeled '*arriving* citizen.'"); *Lopez Benitez*, 795 F. Supp. 3d at 485 ("Here, Respondents' own exhibits unequivocally establish that Mr. Lopez Benitez was detained pursuant to Respondents' discretionary authority under § 1226(a)."); *Barco Mercado*, 811 F. Supp. 3d at 502 (discussing documents/warrants issued when the petitioner was first detained shortly after entering and near the border as well as warrant/authority cited when the petitioner was re-detained in August 2025).

The facts on display in the cases cited are being played out in real time here. The only distinction here is between the unexplained difference between how immigration officials treated Ortiz Soto immediately after she entered the United States unlawfully in January 2019 and how they treated her following her arrest and detention in August 2025. DHS's own documents illustrate this abrupt and inexplicable switch. After Ortiz Soto's arrest and detention following a traffic stop in August, she was then also charged under 8 USC § 1182(a)(6)(A)(i) as follows:

> There is hereby lodged against you an ADDITIONAL **charge** that you are subject to being taken into custody and deported or removed from the United States pursuant to the following provision(s) of law:
>
>> 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document as

> required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

In support of the ADDITIONAL charge there is submitted the following factual **allegation** in addition to those set forth in the original charging document:

> 5. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act.

Whitman Decl., Ex. D, Doc. 11-5, PageID 78. At the hearing on Ortiz Soto's request for bond, the IJ denied bond "because the Court lacks jurisdiction to redetermine Respondent's custody status under INA section 235(b)." Whitman Decl., Ex. C, Doc. 11-4, PageID 76.

But when Ortiz Soto was detained immediately after entering the United States unlawfully in January 2019, the Notice to Appear form issued by DHS had the box checked charging her with being "an alien present in the United States who has not been admitted or paroled." Whitman Decl., Ex. A, Doc. 11-2, PageID 70. The other available charges, whose boxes were left unchecked, were "You are an arriving alien" and "You have been admitted to the United States, but are removable for the reasons stated below." *Id. See, e.g., Patel*, 2025 WL 2996787, at *5 ("[O]n Patel's NTA, the Government checked the box labeled 'You are an alien *present* in the United States who has not been admitted or paroled' rather than checking the box labeled '*arriving*' [alien]." (citations omitted)). The form continued:

> The Department of Homeland Security alleges that you:
>
> 1. You are not a citizen or national of the United States;
> 2. You are a native of HONDURAS and a citizen of HONDURAS;
> 3. You arrived in the United States at or near HIDALGO, TEXAS, on or about January 21, 2019;
> 4. You were not then admitted or paroled after inspection by an Immigration Officer.

28

> On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:
>
>> 212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time of place other than as designated by the Attorney General.

Whitman Decl., Ex. A, Doc. 11-2, PageID 70. Ortiz Soto was directed to appear before an IJ in Texas at a time and date to be set. *Id.* She was then immediately released on her own recognizance. Whitman Decl., Ex. B, Doc. 11-3, PageID 72.

To be clear, Ortiz Soto was detained immediately upon entering the United States unlawfully, and *then* released on her own recognizance with certain conditions of release. This could only have occurred if she had been detained pursuant to § 1226(a), which allows for release on bond. Had she been detained under § 1225(b)(2), she could only have been released if she had been paroled "for urgent humanitarian reasons or significant public benefit." *Lopez Benitez*, 795 F. Supp. 3d at 485 ("But there is no dispute that the provisions at issue here are mutually exclusive—a noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226, a point Respondents conceded."). Nowhere in the immigration documents submitted to this Court does it state or suggest that when Ortiz Soto was released immediately after entering the United States unlawfully in January 2019, that it was *for urgent humanitarian reasons or significant public benefit*. To the contrary, the documents expressly state that Ortiz Soto was released on her own recognizance. Thus, even if § 1225 *could* have applied to Ortiz Soto when she was first encountered by immigration officials upon entering at the southern border, the documents before this Court clearly show that § 1225 was *not* applied to her. This evidence demonstrates that, between the time Ortiz Soto was originally detained in January 2019 and now, when Ortiz was re-detained in August 2025,

DHS and ICE changed their position on the statute authorizing her detention arbitrarily and without explanation (or any apparent justification).

### 7. Section 1226(a) governs Ortiz Soto's detention.

A sister court recently asked, aptly:

> [H]ow did we get here? For the past 30 years, the Government has applied Section 1226(a) in seeking detention in this context [of a Mexican citizen who has lived in the United States for twenty-five years without ever being lawfully admitted], even though, as Respondents' [counsel] represented at the hearing, they believed they had the discretion to also apply Section 1225(b)(2)(A). Now that Respondents' immigration policy has changed and Section 1225(b)(2)(A) is more favorable, they want the Court to declare that the application of Section 1226(a) is incorrect. Respondents can't have it both ways. The plain language of the statutes, the overall structure, the intent of Congress, and over 30 years of agency action make clear that Section 1226(a) is the appropriate statutory framework for determining bond for noncitizens who are already in the country and facing removal.

*Lopez-Campos*, 797 F. Supp. 3d at 780. This Court joins the chorus of innumerable federal courts within this Circuit and across the country rejecting Respondents' contention that § 1225(b)(2)(A), rather than § 1226(a) governs Ortiz Soto's detention in this case. *See Martinez-Elvir v. Olson*, 807 F. Supp. 3d 725, 741–42 (W.D. Ky. Oct. 27, 2025) (collecting cases within the Sixth Circuit rejecting Respondents' interpretation of § 1225(b)(2)(A)); *see also Ortiz Gutierrez v. Raycraft*, --- F.Supp.3d ---, 2026 WL 456065, at *3–4 (S.D. Ohio 2026) (Barrett, J.); *Ramirez Quintana v. Lynch*, No. 1:25-cv-919, 2026 WL 746359, at *10 (S.D. Ohio Mar. 17, 2026) (Dlott, J.).[7]

---

[7] Another Judge in this Court reached a different result on this statutory interpretation. *Coronado v. Secretary, Department of Homeland Security*, No. 1:25-cv-831, 2025 WL 3628229 (S.D. Ohio Dec. 15, 2025) (Cole, J.); *Masis Lucero v. Field Office Director of Enforcement and Removal Operations, Detroit Field Office, Immigration and Customs Enforcement, et al.*, No. 1:25-cv-823, 2025 WL 3718730 (S.D. Ohio Dec. 23, 2025) (Cole, J.); *Jose Marcos Villa Gomez v. Field Office Director of Enforcement and Removal Operations, Detroit Field Office, Immigration and Customs Enforcement, et al.*, No. 1:25-cv-810 (S.D. Ohio Dec. 29, 2025) (Cole, J.). The Undersigned has reviewed these decisions and respectfully disagrees.

Having determined as such, the Court turns now to Ortiz Soto's claims and the appropriate remedy to fashion.

### D. Ortiz Soto's detention violates due process.

Ortiz Soto argues in Count One that her detention violates her right to substantive and procedural due process guaranteed by the Fifth Amendment to the United States Constitution and in Count Two that her continued detention violates the Immigration and Nationality Act. Pet., Doc. 1, PageID12. The Court agrees.

"At the heart of the Fifth Amendment is the right to be free from deprivation of life, liberty, or property without due process of law." *Lopez-Campos*, 797 F. Supp. 3d at 784 (citing U.S. CONST. amend. V.). And "[l]iberty is one of the most basic and fundamental rights afforded[]" to persons *regardless* of their citizenship status. *Id*. The only question remaining to be answered is what process is due to Ortiz Soto.

The three-part test delineated by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976) is routinely applied by courts in the Sixth Circuit when deciding whether civil detention violates a detainee's due process rights. *See, e.g., United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020); *Azalyar v. Raycraft*, 814 F. Supp. 3d 926, 933–35 (S.D. Ohio 2026) (Barrett, J.).[8]

> Those factors are (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Hernandez-Fernandez v. Lyons*, No. 5:25-cv-00773, 2025 WL 2976923, at *8 (W.D. Tex. Oct.

---

[8]  Although Judge Barrett did not reach the statutory question presented here, because the petitioner stipulated that Respondents had detained him pursuant to § 1225, *see Azalyar*, 814 F. Supp. 3d at 931, Judge Barrett applied *Mathews*' three factors in assessing the adequacy of the process that the petitioner was afforded.

21, 2025) (quoting *Mathews*, 424 U.S. at 335). Here, all three factors favor Ortiz Soto.

Consider the first factor: Ortiz Soto's private interest. Under the Fifth Amendment, Ortiz Soto has the right to be free from deprivation of liberty, and therefore a significant private interest in avoiding detention. *See, e.g., Velasco Lopez*, 978 F.3d at 851. According to the Petition, Ortiz Soto is married to a United States citizen, has had work authorization for several years, and started her own house cleaning business. Pet., Doc. 1, ¶¶ 1–3. Her counsel represents that "[e]veryday Mrs. Ortiz Soto spends in detention subjects her to further irreparable harm." *Id.* ¶ 5. Under these facts, the first factor strongly favors Ortiz Soto.

The same is true of the second factor: risk of erroneous deprivation of that interest. An individualized bond hearing would mitigate risk of erroneous deprivation of Ortiz Soto's right to be free from deprivation of liberty under the Fifth Amendment because an IJ would be tasked with considering whether Ortiz Soto poses a risk of flight or danger to the community that would justify her continued detention. *See, e.g., Lopez-Campos*, 797 F. Supp. 3d at 785.

The third factor, too, favors Ortiz Soto. Though the Court recognizes that the Government has "a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community[,]" *Sampiao*, 799 F. Supp. 3d at 33 (cleaned up), there is no indication that detaining Ortiz Soto is vital to that interest absent a showing that she poses a risk of flight or danger to the community. At an individualized bond hearing, the Government would have the opportunity to plead its case, thus there is no risk that requiring such a hearing would impede the Government's interest. *See Azalyar*, 814 F.3d at 935. Further, there is also no indication that granting Ortiz Soto a bond hearing would be fiscally or administratively burdensome. *Sampiao*, 799 F. Supp. 3d at 33–34.

Having found that all three of these factors favor Ortiz Soto, the Court finds that her

current detention under § 1225(b)(2)(A) violates her Fifth Amendment right to due process. This is in accord with numerous other courts that have found the same under circumstances similar to those here. *See, e.g.*, *Urrutia-Diaz*, 2025 WL 3689158, at *7–8; *Del Villar*, 2025 WL 3231630, at *6–7; *Barco Mercado*, 811 F. Supp. 3d at 503–04; *Ramirez Quintana*, 2026 WL 746359, at *11; *Ortiz Gutierrez*, 2026 WL 456065, at *4–5; *see also Lopez Benitez*, 795 F. Supp. 3d at 491–96; *Lopez-Campos*, 797 F. Supp. 3d at 784–85; *Chavez*, 2025 WL 3187080, at *8.

It is thus **ORDERED** that Ortiz Soto's constitutional and statutory claims challenging the denial of bond be **GRANTED**. *See, e.g., Lopez-Campos*, 797 F. Supp. 3d at 785 (discussing violations of due process clause and the INA in granting relief).

### E.  The Court will entertain a motion for attorney's fees and costs.

As a final matter, Ortiz Soto requests attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. Pet., Doc. 1, PageID 13. A court may award "reasonable fees and expenses of attorneys, in addition to costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States . . . " under Section 2412(b) of the EAJA. 28 U.S.C. § 2412(b). If Ortiz Soto elects to pursue attorney's fees and costs, the Court will give any such motion due consideration. *See Ichich Xo v. Daley*, No. 25-176, 2025 WL 3657230, at *8–9 (E.D. Ky. Dec. 17, 2025).

### IV.    CONCLUSION

For these reasons, the Court finds that Ortiz Soto is detained under § 1226(a), not § 1225(b)(2). Accordingly, it is **ORDERED** that Respondents **RELEASE** Ortiz Soto or **PROVIDE** Ortiz Soto with an individualized bond hearing before an immigration judge **within 7 calendar days of the date of this Order** at which the government shall bear the burden to demonstrate, by clear and convincing evidence, that Ortiz Soto is a danger to the

community or a flight risk; at which the IJ must consider non-bond alternatives to detention or, if setting a bond, Ortiz Soto's ability to pay.

Further, the Court **ADOPTS** the Report and Recommendation (Doc. 15) and **GRANTS** Respondent Sheriff Richard K. Jones' Motion to Dismiss (Doc. 7).

**IT IS SO ORDERED.**

May 4, 2026

Jeffery P. Hopkins
United States District Judge